VENTERS, J.,
CONCURRING IN RESULT ONLY:
I concur in the result reached by the majority but, I disagree with its reasoning. The majority holds that to sustain. his claim of defamation and obtain the true names of the offending parties, Hickman must establish a prima facie case supported by what the majority calls “real evidence” that the derogatory remarks are false. The majority says that Hickman has failed to make a “factually based averment” that- the derogatory statements were false, and so his claim must be denied. I disagree because there is no special kind of evidence that must be produced to prove the falseness of alleged defamation. Hickman’s own statement saying, in effect, “I sweár I did not do any of those bad things they said about me” is a “factually based averment,” and in many defamation situations, the' plaintiffs own denial will be the only proof that exists to show the falsity of the derogatory remarks.
The majority’s error on this point flows from an unsound analogy it draws from our decision in Toler v. Sud-Chemie, Inc., 458 S.W.3d 276, 286-87 (Ky.2014). As the majority notes, we held in Toler that malice in a defamation case could not be inferred simply from plaintiffs allegation of the falsity of the derogatory words. Instead, malice “must be shown.” From that holding, the majority reasons that “[i]f a mere allegation of falsity cannot show malice, it also cannot show falsity.” Here is the flaw of that analogy: unlike falsity of the derogatory words, malice dwells in the mind and soul of the defamer, and the victim of the defamation cannot know what lies there. Thus, the victim’s mere averment of malice cannot establish the existence of malice; he must present some extrinsic evidence indicative of the defamer’s malevolent intent. Unlike malice however, the truth or falsity of . the alleged *755 defamation resides in the mind of the victim, and thus the victim knows with absolute certainty if the derogatory statement about him is true or false, and so his own averment on the subject stands as evidence of that fact, even though his mere statement with respect to malice would not.
Ultimately though, Hickman’s effort to identify his detractors fails, not because he fails to show they lied about him, but because the things they said about him are simply not within the scope of actionable defamation. Of the numerous insults hurled at Hickman by his secret detractors, the majority finds only three that it regards as actionable. They are:
1. That “under Bill Hickman’s chairmanship, Little Frankie got exactly what he wanted, and there may be criminal activity involved in the transfer of airport holdings to Little Frankie under -the leadership of his PERSONALLY chosen crony Mr. Bill Hickman.”
2. “We sat back and allowed Bill Hickman, with Little frankie’s [sic] approval, to spend nearly a MILLION dollars of OUR money so they, RAY S. JONES and - BILL HICKMAN, could have NEW, side by side, airplane hangars for their personal pleasure and arrogance.”
3. A number of different allegations that Hickman and the “mayor justice appointed [airport] board” had “wasted” several million dollars of airport funds.
Only the first of the foregoing statements gets even close to actual defamation: the tepid suggestion that “there may be criminal activity involved” in the transfer of airport property to “Little Frankie.” We noted in Stringer v. Wal-Mart Stores, Inc., that when defamation is based upon the imputation of crime, “it is now well-settled that no ‘particular act or transaction’ sufficient for indictment is required, as long as the ‘general terms’ ‘clearly and unequivocally’ impute a ‘high crime, such as murder, robbery, or theft.’ ” 151 S.W.3d 781, 795 (Ky.2004)[4] (quoting DAVID A. ELDER, KENTUCKY TORT LAW: DEFAMATION AND THE RIGHT OF PRIVACY, § 1.07(C)(1)(b) at 68 (1983). Saying “there may be criminal activity involved in the transfer of airport holdings” does not “clearly and unequivocally impute” a crime, “high” or otherwise, to Hickman.
The other allegations are nothing more than the kind of ubiquitous opinion about waste and mismanagement of public funds that'now permeate, the cultural discourse to the point at which they have no real derogatory impact. An expenditure that is in one person’s opinion a waste of community’s money is to another person a vital •investment in the community’s future. We may, of course, debate the merits of either opinion but to characterize one as actionable defamation is incorrect and steps on the toes of First Amendment liberties. Therefore, I agree that the Court of Appeals erred by granting the writ of prohibition but I would reverse its decision for the reasons stated above rather than the reasons cited by the majority.

. Overruled on other grounds by Toler v. Sud-Chemie, Inc., 458 S.W.3d 276 (Ky.2014).